# EXHIBIT A



**CUTLER WILENSKY**

August 31, 2020

*By Certified Mail*
*Return, Receipt, Requested*
Mr. Edward Norcia
122 Rebecca Drive
Downington Pennsylvania 19335

      **Re:**    **Paul Wasgatt v. Allstate Insurance Company, et. al.**
             **Civil Action No. 2085cv00903A**

Dear Mr. Norcia,

      Pursuant to Mass.R.Civ.P. 4 enclosed please find the following documents with regards to the above-referenced action:

- Summons;

- Civil Action Cover Sheet;

- Tracking Order; and

- Complaint and Request for Trial By Jury.

If you have any questions, please do not hesitate to contact us at (617) 232-7500.

                            Sincerely,
                            CUTLER & WILENSKY LLP

                            Robin Quinn
                            Senior Paralegal

rq
enclosures

| **Summons** | CIVIL DOCKET NO.<br>2088CV00903A | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Paul Wasgatt<br><br>vs.                                   Plaintiff(s)<br><br>Allstate Insurance Company,<br>Glenn T. Shapiro,<br>Scott Blume,<br>Edward Norcia<br><br>                                    Defendant(s) | Dennis P. McManus   Clerk of Courts<br>Worcester              County<br>COURT NAME & ADDRESS:<br>Worcester Superior Court<br>225 Main Street<br>Worcester, MA. 01608 |
|---|---|

THIS SUMMONS IS DIRECTED TO   <u>Edward Norcia</u>              (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Worcester Superior Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. How to Respond.

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Worcester Superior Court 225 Main Street, Worcester, MA 01608      (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
Timothy K. Cutler, Esq., CUTLER & WILENSKY LLP
460 Totten Pond Road, Suite 410, Waltham, MA 02451

3. What to Include in Your Response.

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

4. **Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required Information on All Filings:**

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant , Chief Justice on August 31 , 20 20 . (Seal)

Clerk-Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2085CV00903 A | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| CASE NAME: Wasgatt, Paul vs. Allstate Insurance Company et al | Dennis P. McManus, Clerk of Courts |
|---|---|

| TO: Timothy Kendrick Cutler, Esq. CUTLER & WILENSKY LLP 460 Totten Pond Rd Suite 410 Waltham, MA 02451 | COURT NAME & ADDRESS Worcester County Superior Court 225 Main Street Worcester, MA 01608 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                    **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/16/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 12/15/2020 | |
| All motions under MRCP 12, 19, and 20 | 12/15/2020 | 01/14/2021 | 02/15/2021 |
| All motions under MRCP 15 | 12/15/2020 | 01/14/2021 | 02/15/2021 |
| All discovery requests and depositions served and non-expert depositions completed | 06/14/2021 | | |
| All motions under MRCP 56 | 07/13/2021 | 08/12/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/10/2021 |
| Case shall be resolved and judgment shall issue by | | | 08/17/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 08/18/2020 | ASSISTANT CLERK Cheryl Riddle | PHONE (508)831-2358 |
|---|---|---|

Date/Time Printed: 08-18-2020 12:58:28

SCV026i  08/2018

☐ **COPY**

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2005CV00903A | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): Paul Wasgatt | COUNTY |
|---|---|
| ADDRESS: 23 Fiske Street, Worcester MA | Worcester |
| | DEFENDANT(S): Allstate Insurance Company, Glenn T. Shapiro, Scott Blume and Edward Norcia |
| ATTORNEY: Timothy K. Cutler | |
| ADDRESS: CUTLER & WILENSKY LLP | ADDRESS |
| 460 Totten Pond Road, Suite 410, Waltham, MA 02451 | |
| BBO: 636124 | |

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A04 | Employment Contract | F | ☒ YES   ☐ NO |

"If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is this a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☐ YES   ☒ NO | ☐ YES   ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ......................................... $ _____
2. Total doctor expenses ........................................... $ _____
3. Total chiropractic expenses ................................... $ _____
4. Total physical therapy expenses ........................... $ _____
5. Total other expenses (describe below) .................. $ _____

**RECEIVED**

Subtotal (A): $ _____

**AUG 17 2020**

B. Documented lost wages and compensation to date ....... $ _____
C. Documented property damages to date ......................... $ _____
D. Reasonably anticipated future medical and hospital expenses ... $ _____

**CLERK OF COURTS**

E. Reasonably anticipated lost wages ............................. **WORCESTER COUNTY** $ _____
F. Other documented items of damages (describe below) ....... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F):$ _____

#### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

Misclassification as an independent contractor, termination in violation of public policy, breach of contract.

TOTAL: $ 750,000+

**Signature of Attorney/ Unrepresented Plaintiff:** X _____   Date: 14/8/2020

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

**Signature of Attorney of Record:** X _____



**COMMONWEALTH OF MASSACHUSETTS**

WORCESTER, ss                               SUPERIOR COURT DEPARTMENT

PAUL WASGATT, and individual.
  Plaintiff,                          Civil Action No. 2085CV00903A

v.

ALLSTATE INSURANCE COMPANY, an              # RECEIVED
Illinois Corporation; GLENN T. SHAPIRO,
individually, SCOTT BLUME, individually;    **AUG 17 2020**
and EDWARD NORCIA, individually.
  Defendants.                        CLERK OF COURTS
                                            WORCESTER COUNTY

## COMPLAINT AND REQUEST FOR TRIAL BY JURY

### PREFATORY ALLEGATIONS

1.   Plaintiff Paul Wasgatt ("Mr. Wasgatt") is an individual residing at 23 Fiske Street, Worcester, Massachusetts

2.   Defendant Allstate Insurance Company ("Allstate") is an Illinois corporation with a place of business located in Sturbridge, Massachusetts.

3.   Defendant Glenn T. Shapiro ("Mr. Shapiro") is an individual residing at 375 Greenhill Road, Longmeadow, Massachusetts and is the President of Allstate.

4.   Defendant Scott Blume ("Mr. Blume") is an individual with an address at 198 Charlton Road, Sturbridge, Massachusetts and is a Territory Sales Manager at Allstate, responsible for overseeing and managing Exclusive Agents, including the Plaintiff.

5.   Defendant Edward Norcia ("Mr. Norcia") is an individual residing on Rebecca Drive, Downington, Pennsylvania and is a Sales and Recruiting Leader Northeast Region at Allstate, responsible for overseeing and managing Exclusive Agents, including the Plaintiff.

6.   Defendants Mr. Blume, Mr. Shapiro and Mr. Norcia were, at all relevant times alleged herein, officers and agents of Allstate having management responsibilities for Allstate and are personally liable for the wrongdoings alleged here in accordance with Chapter 149 section 148B of the Massachusetts General Laws.

7.   Allstate, Mr. Blume, Mr. Shapiro and Mr. Norcia are collectively referred to here "Allstate" or "Defendants".

1

# BACKGROUND

8.   Allstate is in the business of selling insurance products, along with related services, to consumers throughout the United States, including the Commonwealth of Massachusetts.

9.   Mr. Blume, Mr. Shapiro and Mr. Norcia were officers and/or agents of Allstate involved in the management of Allstate and were directly involved in the overseeing, managing and promulgating the use of and misclassification of its Exclusive Agents as independent contractors, including the Plaintiff.

10.  Mr. Blume and Mr. Norcia directly supervised Plaintiff with respect to the performance of Plaintiff's duties and responsibilities at Allstate. Allstate required that Plaintiff participate in Allstate's required training and complied with Allstate's policies and procedures. They tracked the performance of Plaintiff and had a significant and controlling say in whether or not Plaintiff was to be terminated from Allstate. They disciplined Plaintiff when they felt that Plaintiff's attitude and behavior did not comport with the corporate cultural of Allstate.

11.  Mr. Shapiro as President (since January 2018, Executive Vice President since March 2016) oversees the entirety of the operations of Allstate, including the decision to continue to misclassify its Exclusive Agents in Massachusetts as independent contractors. Mr. Shapiro has the final say in how Allstate's workforce is structured and whether or not to use independent contractors to carry out the core and perhaps the most important aspect of Allstate's business, which is to sell its insurance products.

12.  Mr. Wasgatt had repeated communications with Mr. Shapiro regarding two issues: Allstate's failure and refusal comply with the laws of the Commonwealth of Massachusetts governing insurance and Allstate's unfilled representations that it would be offering additional insurance products to the consumers located within Massachusetts.

13.  In about 2012 Allstate commenced selling its insurance products in the Commonwealth of Massachusetts. Ignoring the significant change in the laws of Massachusetts that went into effect in 2004, Allstate decide to sell its insurance through Exclusive Agents, which are fundamentally employees that Allstate has illegally misclassified as independent contractors, rather than comply with the laws of the Commonwealth of Massachusetts and sell its insurance through those agents that Allstate had properly classified as employees.

14.  Mr. Shapiro oversaw the expansion and use of independent contractors in lieu of employees to exclusively sell its insurance policies. Mr. Shapiro was ultimately responsible for deciding to ignore and violate the laws of the Commonwealth of Massachusetts prohibiting the misclassification of employees as independent contractors, an act that the Massachusetts Attorney General has called to be a form of insurance fraud.

15.  Mr. Shapiro has known at all relevant times the misclassification laws of the Commonwealth of Massachusetts having been the Chief Claims Officer & EVP - Commercial Insurance at Liberty Mutual Group, Inc. headquartered in Boston,

Massachusetts, as well as holding high level posts within insurance companies in the Boston area prior thereto.

16.    The purpose of Allstate, as lead by Mr. Shapiro, in misclassifying its employee insurance agents in Massachusetts as independent contractors was to gain an economic advantage over its competitors, which was achieved by avoiding paying Massachusetts payroll taxes, worker's compensation and purchasing unemployment insurance, all of which a legitimate employer doing business in and complying with the laws of the Commonwealth would pay for and purchase. Mr. Shapiro sought to increase his company's bottom line by defrauding the Commonwealth of Massachusetts while placing its Exclusive Agents at a grave financial risk.

17.    Mr. Wasgatt was an Allstate Exclusive Agent who was terminated by Allstate on May 22, 2020 for an undefined cause.

18.    During the entirety of his employment with Allstate, Mr. Wasgatt was misclassified by Allstate as an independent contractor.

19.    On May 22, 2020, Mr. Wasgatt filed a complaint with the Massachusetts Attorney General against Allstate for misclassifying him as independent contractor and a right to sue letter has been issued.

20.    Historically, Allstate's business model has been to sell its policies through employee agents situated in retail stores such as Sears and in Allstate-owned sales offices. Then Allstate's business model migrated to the Neighborhood Office Agent program, which consisted of local offices manned and run by Allstate employees. Allstate later shifted to its Exclusive Agency program, which at first primarily consisted of employees and Call Centers manned by Allstate employees.

21.    Allstate's employees whether working out of a Sears' store, an Allstate-owned sales office, a Neighborhood Office, Call Centers or as an Exclusive Agent, were all performing the same core Allstate business function -- exclusively selling Allstate's insurance products and servicing Allstate's customers.

22.    In its never-ending search for ways to optimize financial returns, which entailed the shedding of costs and overhead, Allstate converted all of its Exclusive Agents from the status as employees to independent contractors, while simultaneously maintaining employee salespersons in its Call Centers. This misclassification of its Exclusive Agents working in the marketing, sales and customer service portion of its business relieved Allstate of the financial burden of payroll taxes, benefits, and the costs of unemployment insurance and worker's compensation insurance; thus, defrauding the Commonwealth of tax dollars while denying its employees basic financial protections.

23.    The misclassification of its Exclusive Agents as independent contractors is a direct violation of the Massachusetts statutory prohibitions against classifying employees as independent contractors.

24.      Exclusive Agents are also referred to as captive agents in that they may only work for a single insurance carrier, only selling that carrier's products and servicing its clients.

25.      As a captive agent, Plaintiff could only sell Allstate insurance products and services and could not work for or with any other insurance carriers, unless otherwise specifically permitted to do so by Allstate.

26.      Plaintiff was required to work certain hours.  He was required to work from specific locations set and restricted by Allstate.

27.      Allstate oversaw through policies and direct intervention the hiring and firing of Plaintiff's employees.

28.      Plaintiff was required only to use Allstate approved advertising materials.

29.      All payments received from customers went into financial accounts solely controlled and managed by Allstate.

30.      Insurance agents are an integral part of the Allstate's business and without insurance agents there would be no Allstate.  Plaintiff's performance was thus unique to Allstate.

31.      As a captive agent, Plaintiff was required to hold himself out as an agent of Allstate and to actively and only promote Allstate's products; and not to promote or sell the policies of any other carrier.

32.      As a captive agent, Plaintiff was required to attend mandatory training to learn the internal policies and procedures of Allstate and how to sell Allstate insurance products and services, as well as to conform to the practices and procedures of Allstate -- the same any as other employee would be required to do by their employer.

33.      The mandated training was in large part to train captive agents on the fundamentals on how to sell insurance and what to do as an insurance agent.  Allstate took and continues to take individuals with no significant insurance experience and then train them to be Allstate insurance agents, exclusive to Allstate.

34.      Prior to and leading up to his wrongful termination by Allstate on May 22, 2020, Mr. Wasgatt filed a number of complaints with the Massachusetts Department of Insurance regarding Allstate's deceptive insurance practices.

35.      These complaints concerned Allstate's engagement in illegal practices in the Commonwealth of Massachusetts, practices that directly harmed consumers of insurance policies, particularly auto policies.

4

36.   On numerous occasions, while working for Allstate, Mr. Wasgatt was directed by Allstate to take actions with respect Allstate's customers that were in violation of the insurance laws of Massachusetts.

37.   Mr. Wasgatt notified his superiors at Allstate of these illegal actions -- Mr. Blume, Andrew Grande, Scott Schrum, David Schwartzer, Doug Lojko, Mr. Norcia, Frederick Owens, Hall Crowder, James Flynn, Kymberly Terry, Laurie Landeen, Sara Syrotchen, Shawn Rogerson, Stephen Roberto, David Prentergast, Tammy Shaulis, Mr. Shapiro and the entire RMBC Staff. Rather than correct or even address Allstate's illegal activities and actions, Allstate directed Mr. Wasgatt to ignore the laws of the Commonwealth Massachusetts intended to protect financial and other rights of Massachusetts consumers.

38.   These illegal activities and actions are endemic to a culture created and nurtured by Allstate's leadership, starting at the top with Mr. Shapiro and then permeating throughout the company. A corporate culture that not only ignores, but openly distained, laws designed to protect consumers (its customers) and workers (its employees). All in the interest of higher returns and increased stock values.

39.   Mr. Wasgatt refused to engage in the illegal insurance practices as instructed and directed by Allstate.

40.   When Mr. Wasgatt notified Allstate of and requested that Allstate abandon its illegal insurance practices, he was ignored and Allstate continued to engage in its illegal activities unabated. Mr. Wasgatt was thus left with no choice but to notify the Department of Insurance, which in turn directed Allstate to cease and desist from continuing to engage in illegal insurance practices.

41.   The following are the complaints lodged by Mr. Wasgatt regarding Allstate's illegal issuance practices with the Massachusetts Department of Insurance regarding Allstate's illegal insurance practices:

- Allstate issued cancelation of policies falsely and illegally listing the reason for the cancelation as being that the insured already had a current auto policy. That is not a valid reason under Massachusetts law for a cancelation.

- Allstate refused to change the driver's classification of a driver during the policy period. Massachusetts regulations require that driver classification be done based on the date upon which the classification change occurs, not the policy renewal date.

- Allstate illegally added drivers to auto insurance policies without the insureds permission or consent, which is a violation of the laws of Massachusetts.

- Allstate used third party information to determine fault in accidents and refused to abide by and ignored the official record of the Registry of Motor Vehicles as required by Massachusetts law.

5

- Allstate held that accidents that the insured was not at fault were to be used in the calculation of renewal premiums. Allstate wrongly considered accidents in which the insured was not at fault to be chargeable as an at fault accident and illegally charged the insured additional premium upon the renewal of their policies until Allstate received payment in subrogation.

- Allstate charged customers late fees of $25.00 on policies canceled by 2A on the renewal date. Violating Massachusetts laws.

42.   The complaints filed by Mr. Wasgatt both with the Massachusetts Department of Insurance and Allstate itself were to protect the public at large from the illegal and predatory insurance practices engaged in by Allstate.

43.   On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to follow Allstate's directives to engage in illegal and predatory insurance practices and because he had brought these illegal and predatory practices to the attention of Allstate's management and then subsequently filed complaints with the Massachusetts Department of Insurance. As confirmed by the Massachusetts Department of Insurance, Allstate was, as pointed out by Mr. Wasgatt, in fact engaging in illegal insurance practices in violation the laws of the Commonwealth of Massachusetts and was financially harming and violating the rights of its customers throughout the Commonwealth.

44.   Allstate had entered into a written agreement with Mr. Wasgatt that provided that upon the termination of Mr. Wasgatt he was entitled to a termination payment.

45.   The termination payment was again referenced in his termination letter of May 22, 2020.

46.   Subsequent to his termination, Mr. Wasgatt was sent a spreadsheet with the calculations of his termination payment. The spreadsheet provided that his termination payment was to be Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

47.   In breach of the parties' agreement, Allstate failed and refused to make this termination payment.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Misclassification As An Independent Contractor**
**Chapters 149, §148B; 151, 152 & 62B**
**(Against All Defendants)**

8.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

. In 2004, the Massachusetts legislature amended the independent contractor statute, Chapter 149, section 148D, making the statute one of the most, if not the most, stringent in the Nation.

. The statute reflects a strong public policy disfavoring the classification of those providing services to another as independent contractors.

. The Massachusetts Attorney General has rendered an advisory opinion stating that "[t]he need for proper classification of individuals in the workplace is of paramount importance to the Commonwealth."

2. The Attorney General further stated in its advisory opinion:

> Entities that misclassify individuals are in many cases **committing insurance fraud** and deprive individuals of many protections and benefits, both public and private, that employees enjoy. Misclassified individuals are often left without unemployment insurance and worker's compensation benefits. In addition, misclassified individuals do not have access to employer-provided health care and may be paid reduced wages or cash as wage payments. [emph. added].

3. Under the Massachusetts' independent contractor statute, an individual performing any service is presumed to be an employee. This presumption may only be rebutted by the establishment of all three (3) conditions of the independent contractor test set forth in the statute. Allstate cannot establish all three (3) conditions to overcome the presumption, let alone any single condition, showing that Plaintiff was improperly classified as independent contractors.

4. Plaintiff as an Exclusive Agent is a captive agent of Allstate and he could only sell and service Allstate products and clients. Allstate, however, has a separate group of salespersons who work in its Call Centers who are classified as employees.

5. Allstate over time has converted its employee Exclusive Agents to independent contractors continuing to perform the same functions and duties for Allstate as had been performed by the Exclusive Agents when they had previously been classified as employees.

6. Concurrently, Allstate has maintained its Call Center sale's force as employees.

7. Allstate's independent contractor Exclusive Agents and its employee Call Center salespersons perform overlapping sale functions core to the business of Allstate.

8. The services performed for and the tasks carried out by Plaintiff on behalf of Allstate include marketing Allstate insurance products in accordance with Allstate's guidelines and under its direct oversight, identifying potential customers for Allstate, being the face of Allstate to Allstate's customers, servicing Allstate clients, customer service, payment

transfers of vehicles on and off policies, correction of lienholders and mortgagee's on numerous policies, the processing of payments and the facilitation of Registry Documents.

59.     When Plaintiff received a claim from an insured, he was discouraged by Allstate from helping or otherwise assisting the insured with claims. Mr. Wasgatt was specifically directed by his superiors at Allstate that the providing of such advice to customers would not be looked upon in a favorable light by Allstate corporate. Mr. Wasgatt was told that he worked for the company (Allstate) and he should be looking out for the company's (Allstate's) best interests, not the insureds. Plaintiff was directed by Allstate never to suggest that an insured contact legal representation for a bodily injury or liability claim. Like any other employees, his fidelity was to be solely to Allstate and he was to only serve the needs and wishes of his employer, Allstate -- he was not to act independently or to conduct himself as independent professional.

60.     A significant percent of all insurance policies sold in the Commonwealth of Massachusetts by Allstate are sold through its Exclusive Agents and the remainder are sold through its employee agents working at its Call Centers.

61.     Plaintiff was fully integrated into Allstate's corporate structure and the transitioning of Allstate Exclusive Agents to independent contractors was a planned corporate restructuring designed in part to enhance the distribution of Allstate insurance products while decreasing overhead costs by avoiding the payment of taxes, employee benefits, workers' compensation and other costs associated with paying an agent as an employee. While at the same time shifting costs onto the independent contractor Exclusive Agents, costs that had previously been borne by Allstate as an employer.

62.     Rather than use independent agents under the "American Rule" that are free to sell the products of any carrier, Allstate converted its existing employees to independent contractors precluding these converted Exclusive Agents from running their agencies as independent professionals.

63.     Plaintiff was not free from control and direction in connection of his performance for Allstate.

64.     As Exclusive and captive agents, Allstate directed Plaintiff on how he was to perform, including the hours to work, set performance standards, controlled how he advertised his agency, how to interact with customers, who he could hire and fire, and the Plaintiff could only purchase E&O insurance from Allstate.

65.     Plaintiff was mandated to exclusively work for Allstate and not to work for, provide services to or sell the products of any other insurance carrier.

66.     Plaintiff was only permitted to service Allstate's actual and prospective clients. Plaintiff was required to market his agency as an exclusive Allstate agency and Allstate controlled the content of the Plaintiff's marketing materials.

67. All banking accounts in which customer payments were deposited were controlled by Allstate. Plaintiff did not deposit customer payments in bank accounts controlled by Plaintiff, but rather all payments by customers were placed in bank accounts under the control of Allstate.

68. Plaintiff was required to attend mandatory training to be an Exclusive Allstate agent. Allstate designated where Plaintiff was to work and operate his captive agency and Allstate closely tracked Plaintiff's performance.

69. The training that Allstate required Plaintiff to attend as part of being employed as Exclusive Agent primarily focused on teaching Plaintiff and other newly employed Exclusive Agents the fundamentals on how to sell insurance and be an insurance agent.

70. Allstate ultimately decided which customer it would insure or not and Plaintiff had no control, let alone say or input, into who they could insure and had to strictly adhere to Allstate's decisions and directives. All changes on policies had to be approved by Allstate's RMBC Call Center. Exclusive Agents had no authority to make exceptions for individual insureds. All changes made to policies where overseen and approved by the Allstate's management staff.

71. Allstate closely tracked the performance of Plaintiff.

72. Plaintiff was overseen by Allstate's Human Resources Department, the same as Allstate's Call Center salespersons and all of the other employees of Allstate.

73. The services rendered by Plaintiff to Allstate were not performed outside the usual course of Allstate's business and were not merely incidental to the Allstate's insurance business. Rather, the services rendered by Plaintiff were a necessary and core part of, and fully integrated into, Allstate's business and operations.

74. As a captive agent exclusive to Allstate, Plaintiff worked in Allstate branded agency offices exclusively selling Allstate insurance products and services.

75. Plaintiff was a core component of Allstate's business and the primary means by which Allstate sold its products and services to its customers.

76. All of the information obtained by Plaintiff as an Exclusive Agent of Allstate was deemed by Allstate to be the confidential business information of Allstate.

77. Plaintiff interacted with Allstate's customers for the purpose of selling policies of insurance for Allstate and to service the customer needs, an integral part of Allstate's business model.

78. Plaintiff was not an independently established trade, occupation, profession or business in that he was exclusive to Allstate. In fact, Allstate has historically exclusively sold its insurance products through its employee salespersons, whether they be retail outlets, Neighborhood Office Agent program, as Exclusive Agents or currently Call Center

salespersons.   Allstate transformed a business model that had at one time been in compliance with the law to one that directly violated the law by reclassifying its employee sales agents to independent contractors.

79.   Allstate has strict directives that Plaintiff was required to abide by the rules and procedures set forth Allstate's manuals that set forth how Plaintiff was to operate and conduct himself as an Exclusive Agent of Allstate.

80.   Plaintiff was integrated into Allstate's corporate structure, with corporate layers of managers overseeing Plaintiff along with the employee Call Center Agents, as well as the other Exclusive Agents.

81.   Plaintiff was prohibited from holding himself out as independent insurance agents capable of selling the insurance products of multiple carriers.  Plaintiff was only permitted to maintain his Allstate Agency with the permission and consent of Allstate, permission and consent that Allstate could revoke at any time.

82.   Allstate had authority over the retention of Plaintiff's employees.  Plaintiff could not hire anyone that was not first approved and then trained by Allstate.

83.   Plaintiff's office was required to display Allstate signage and Allstate claimed ownership to Plaintiff's telephone numbers and Plaintiff's files and customer information.

84.   Plaintiff's lost wages and damages include, but are not limited to: Exclusive Agency contract fees, worker's compensation payments, payroll taxes and deductions, social security, benefits, unemployment taxes, overtime wages, unpaid wages, office expenses, salaries and related expenses of persons working in Plaintiff's Allstate agency office, and other expenses and costs that should have been borne by Allstate as the employer.

85.   Plaintiff will prove his damages at trial.

## SECOND CAUSE OF ACTION
### Termination of Mr. Wasgatt In Violation of Public Policy
### (Against Allstate)

86.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

87.   Mr. Wasgatt was instructed by Allstate to engage in insurance practices that were in violation of the laws of the Commonwealth of Massachusetts.

88.   Those illegal insurance practices violated the laws of the Commonwealth of Massachusetts intended to protect the public at large.

89.   Mr. Wasgatt refused to engage in the illegal insurance practices as directed by Allstate.

10

90.     Rather Mr. Wasgatt notified those above him in Allstate's corporate hierarchy that Allstate was directing its Exclusive Agents to engage in illegal insurance practices.

91.     Allstate ignored this information and continued to engage in illegal insurance practices, as well as to continue to demand that Mr. Wasgatt, along with the other Exclusive Agents, engage in illegal insurance practices on behalf of Allstate.

92.     Mr. Wasgatt accordingly notified the Massachusetts Department of Insurance of six (6) illegal insurance practices engaged in by Allstate. The Department of Insurance, in each instance, agreed with Mr. Wasgatt that Allstate's insurance practices violated the insurance laws of the Commonwealth of Massachusetts intended to protect the public at large.

93.     On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to engage in illegal insurance practices as directed by his superiors at Allstate, as well as the fact that Mr. Wasgatt notified his superiors they were engaging in illegal insurance practices and filed six (6) complaints with Massachusetts Department of Insurance that Allstate engaged in illegal insurance practices.

94.     Mr. Wasgatt will prove his damages at trial.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**Failure to Pay Mr. Wasgatt His Termination Payment**
**(Against Allstate)**

95.     Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

96.     Allstate and Mr. Wasgatt entered into a written agreement containing a material provision that Allstate would pay Mr. Wasgatt a termination payment upon his termination from Allstate.

97.     The written agreement was reconfirmed by Allstate in the termination letter it sent Mr. Wasgatt dated May 22, 2020.

98.     The termination payment was further confirmed by a spreadsheet prepared by Allstate and sent to Mr. Wasgatt following his termination setting forth how Allstate calculated the termination payment.

99.     The amount of the termination payment was Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

100.    Mr. Wasgatt performed all of his material duties and obligations under the parties' agreement and was entitled to the termination payment.

101   Allstate breached the parties' agreement by failing to pay Mr. Wasgatt his termination payment.

102   Mr. Wasgatt will prove his damages at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant the following relief:

a.   Judgment against Defendants;

b.   Damages to be proven at trial;

c.   Treble damages;

d.   Pre-judgment and post-judgment interest;

e.   Attorneys' fees and costs;

f.   Appropriate injunctive, declaratory and other equitable relief; and

g.   Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests that this action to be tried by jury.

DATED: August 17, 2020

PLAINTIFF,
By his attorney.

Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
460 Totten Pond Road, Suite 410
Waltham, Massachusetts 02451
(617) 232-7500 Telephone
(617) 232-7560 Facsimile
tim@cutlerlegal.com

## COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss                                    SUPERIOR COURT DEPARTMENT

PAUL WASGATT, and individual.
   Plaintiff,                               Civil Action No. 2085CV00903A

v.

ALLSTATE INSURANCE COMPANY, an
Illinois Corporation; GLENN T. SHAPIRO,
individually, SCOTT BLUME, individually;
and EDWARD NORCIA, individually.
   Defendants.

# FILED

**AUG 17 2020**

ATTEST: _Dul Huln_ CLERK

## COMPLAINT AND REQUEST FOR TRIAL BY JURY

### PREFATORY ALLEGATIONS



1.   Plaintiff Paul Wasgatt ("Mr. Wasgatt") is an individual residing at 23 Fiske Street, Worcester, Massachusetts

2.   Defendant Allstate Insurance Company ("Allstate") is an Illinois corporation with a place of business located in Sturbridge, Massachusetts.

3.   Defendant Glenn T. Shapiro ("Mr. Shapiro") is an individual residing at 375 Greenhill Road, Longmeadow, Massachusetts and is the President of Allstate.

4.   Defendant Scott Blume ("Mr. Blume") is an individual with an address at 198 Charlton Road, Sturbridge. Massachusetts and is a Territory Sales Manager at Allstate, responsible for overseeing and managing Exclusive Agents, including the Plaintiff.

5.   Defendant Edward Norcia ("Mr. Norcia") is an individual residing on Rebecca Drive, Downington, Pennsylvania and is a Sales and Recruiting Leader Northeast Region at Allstate, responsible for overseeing and managing Exclusive Agents, including the Plaintiff.

6.   Defendants Mr. Blume, Mr. Shapiro and Mr. Norcia were, at all relevant times alleged herein, officers and agents of Allstate having management responsibilities for Allstate and are personally liable for the wrongdoings alleged here in accordance with Chapter 149, section 148B of the Massachusetts General Laws.

7.   Allstate, Mr. Blume, Mr. Shapiro and Mr. Norcia are collectively referred to herein as "Allstate" or "Defendants".

1

## BACKGROUND

8.    Allstate is in the business of selling insurance products, along with related services, to
      consumers throughout the United States, including the Commonwealth of Massachusetts.

9.    Mr. Blume, Mr. Shapiro and Mr. Norcia were officers and/or agents of Allstate involved
      in the management of Allstate and were directly involved in the overseeing, managing and
      promulgating the use of and misclassification of its Exclusive Agents as independent
      contractors, including the Plaintiff.

10.   Mr. Blume and Mr. Norcia directly supervised Plaintiff with respect to the performance of
      Plaintiff's duties and responsibilities at Allstate. Allstate required that Plaintiff participate
      in Allstate's required training and complied with Allstate's policies and procedures. They
      tracked the performance of Plaintiff and had a significant and controlling say in whether or
      not Plaintiff was to be terminated from Allstate. They disciplined Plaintiff when they felt
      that Plaintiff's attitude and behavior did not comport with the corporate cultural of Allstate.

11.   Mr. Shapiro as President (since January 2018, Executive Vice President since March 2016)
      oversees the entirety of the operations of Allstate, including the decision to continue to
      misclassify its Exclusive Agents in Massachusetts as independent contractors. Mr. Shapiro
      has the final say in how Allstate's workforce is structured and whether or not to use
      independent contractors to carry out the core and perhaps the most important aspect of
      Allstate's business, which is to sell its insurance products.

12.   Mr. Wasgatt had repeated communications with Mr. Shapiro regarding two issues:
      Allstate's failure and refusal comply with the laws of the Commonwealth of Massachusetts
      governing insurance and Allstate's unfilled representations that it would be offering
      additional insurance products to the consumers located within Massachusetts.

13.   In about 2012 Allstate commenced selling its insurance products in the Commonwealth of
      Massachusetts. Ignoring the significant change in the laws of Massachusetts that went into
      effect in 2004, Allstate decide to sell its insurance through Exclusive Agents, which are
      fundamentally employees that Allstate has illegally misclassified as independent
      contractors, rather than comply with the laws of the Commonwealth of Massachusetts and
      sell its insurance through those agents that Allstate had properly classified as employees.

14.   Mr. Shapiro oversaw the expansion and use of independent contractors in lieu of employees
      to exclusively sell its insurance policies. Mr. Shapiro was ultimately responsible for
      deciding to ignore and violate the laws of the Commonwealth of Massachusetts prohibiting
      the misclassification of employees as independent contractors, an act that the
      Massachusetts Attorney General has called to be a form of insurance fraud.

15.   Mr. Shapiro has known at all relevant times the misclassification laws of the
      Commonwealth of Massachusetts having been the Chief Claims Officer & EVP -
      Commercial Insurance at Liberty Mutual Group, Inc. headquartered in Boston,

2

Massachusetts, as well as holding high level posts within insurance companies in the Boston area prior thereto.

16.   The purpose of Allstate, as lead by Mr. Shapiro, in misclassifying its employee insurance agents in Massachusetts as independent contractors was to gain an economic advantage over its competitors, which was achieved by avoiding paying Massachusetts payroll taxes, worker's compensation and purchasing unemployment insurance, all of which a legitimate employer doing business in and complying with the laws of the Commonwealth would pay for and purchase. Mr. Shapiro sought to increase his company's bottom line by defrauding the Commonwealth of Massachusetts while placing its Exclusive Agents at a grave financial risk.

17.   Mr. Wasgatt was an Allstate Exclusive Agent who was terminated by Allstate on May 22, 2020 for an undefined cause.

18.   During the entirety of his employment with Allstate, Mr. Wasgatt was misclassified by Allstate as an independent contractor.

19.   On May 22, 2020. Mr. Wasgatt filed a complaint with the Massachusetts Attorney General against Allstate for misclassifying him as independent contractor and a right to sue letter has been issued.

20.   Historically, Allstate's business model has been to sell its policies through employee agents situated in retail stores such as Sears and in Allstate-owned sales offices. Then Allstate's business model migrated to the Neighborhood Office Agent program, which consisted of local offices manned and run by Allstate employees. Allstate later shifted to its Exclusive Agency program, which at first primarily consisted of employees and Call Centers manned by Allstate employees.

21.   Allstate's employees whether working out of a Sears' store, an Allstate-owned sales office, a Neighborhood Office, Call Centers or as an Exclusive Agent, were all performing the same core Allstate business function -- exclusively selling Allstate's insurance products and servicing Allstate's customers.

22.   In its never-ending search for ways to optimize financial returns, which entailed the shedding of costs and overhead, Allstate converted all of its Exclusive Agents from the status as employees to independent contractors, while simultaneously maintaining employee salespersons in its Call Centers. This misclassification of its Exclusive Agents working in the marketing, sales and customer service portion of its business relieved Allstate of the financial burden of payroll taxes, benefits, and the costs of unemployment insurance and worker's compensation insurance; thus, defrauding the Commonwealth of tax dollars while denying its employees basic financial protections.

23.   The misclassification of its Exclusive Agents as independent contractors is a direct violation of the Massachusetts statutory prohibitions against classifying employees as independent contractors.

3

24. Exclusive Agents are also referred to as captive agents in that they may only work for a single insurance carrier, only selling that carrier's products and servicing its clients.

25. As a captive agent, Plaintiff could only sell Allstate insurance products and services and could not work for or with any other insurance carriers, unless otherwise specifically permitted to do so by Allstate.

26. Plaintiff was required to work certain hours. He was required to work from specific locations set and restricted by Allstate.

27. Allstate oversaw through policies and direct intervention the hiring and firing of Plaintiff's employees.

28. Plaintiff was required only to use Allstate approved advertising materials.

29. All payments received from customers went into financial accounts solely controlled and managed by Allstate.

30. Insurance agents are an integral part of the Allstate's business and without insurance agents there would be no Allstate. Plaintiff's performance was thus unique to Allstate.

31. As a captive agent, Plaintiff was required to hold himself out as an agent of Allstate and to actively and only promote Allstate's products; and not to promote or sell the policies of any other carrier.

32. As a captive agent, Plaintiff was required to attend mandatory training to learn the internal policies and procedures of Allstate and how to sell Allstate insurance products and services, as well as to conform to the practices and procedures of Allstate -- the same any as other employee would be required to do by their employer.

33. The mandated training was in large part to train captive agents on the fundamentals on how to sell insurance and what to do as an insurance agent. Allstate took and continues to take individuals with no significant insurance experience and then train them to be Allstate insurance agents, exclusive to Allstate.

34. Prior to and leading up to his wrongful termination by Allstate on May 22, 2020, Mr. Wasgatt filed a number of complaints with the Massachusetts Department of Insurance regarding Allstate's deceptive insurance practices.

35. These complaints concerned Allstate's engagement in illegal practices in the Commonwealth of Massachusetts, practices that directly harmed consumers of insurance policies, particularly auto policies.

4

36.     On numerous occasions, while working for Allstate, Mr. Wasgatt was directed by Allstate to take actions with respect Allstate's customers that were in violation of the insurance laws of Massachusetts.

37.     Mr. Wasgatt notified his superiors at Allstate of these illegal actions -- Mr. Blume, Andrew Grande, Scott Schrum, David Schwartzer, Doug Lojko, Mr. Norcia, Frederick Owens, Hall Crowder, James Flynn, Kymberly Terry, Laurie Landeen, Sara Syrotchen, Shawn Rogerson, Stephen Roberto, David Prentergast, Tammy Shaulis, Mr. Shapiro and the entire RMBC Staff. Rather than correct or even address Allstate's illegal activities and actions, Allstate directed Mr. Wasgatt to ignore the laws of the Commonwealth Massachusetts intended to protect financial and other rights of Massachusetts consumers.

38.     These illegal activities and actions are endemic to a culture created and nurtured by Allstate's leadership, starting at the top with Mr. Shapiro and then permeating throughout the company. A corporate culture that not only ignores, but openly distained, laws designed to protect consumers (its customers) and workers (its employees). All in the interest of higher returns and increased stock values.

39.     Mr. Wasgatt refused to engage in the illegal insurance practices as instructed and directed by Allstate.

40.     When Mr. Wasgatt notified Allstate of and requested that Allstate abandon its illegal insurance practices, he was ignored and Allstate continued to engage in its illegal activities unabated. Mr. Wasgatt was thus left with no choice but to notify the Department of Insurance, which in turn directed Allstate to cease and desist from continuing to engage in illegal insurance practices.

41.     The following are the complaints lodged by Mr. Wasgatt regarding Allstate's illegal issuance practices with the Massachusetts Department of Insurance regarding Allstate's illegal insurance practices:

  - Allstate issued cancelation of policies falsely and illegally listing the reason for the cancelation as being that the insured already had a current auto policy. That is not a valid reason under Massachusetts law for a cancelation.

  - Allstate refused to change the driver's classification of a driver during the policy period. Massachusetts regulations require that driver classification be done based on the date upon which the classification change occurs, not the policy renewal date.

  - Allstate illegally added drivers to auto insurance policies without the insureds permission or consent, which is a violation of the laws of Massachusetts.

  - Allstate used third party information to determine fault in accidents and refused to abide by and ignored the official record of the Registry of Motor Vehicles as required by Massachusetts law.

5

- Allstate held that accidents that the insured was not at fault were to be used in the calculation of renewal premiums. Allstate wrongly considered accidents in which the insured was not at fault to be chargeable as an at fault accident and illegally charged the insured additional premium upon the renewal of their policies until Allstate received payment in subrogation.

- Allstate charged customers late fees of $25.00 on policies canceled by 2A on the renewal date. Violating Massachusetts laws.

42.    The complaints filed by Mr. Wasgatt both with the Massachusetts Department of Insurance and Allstate itself were to protect the public at large from the illegal and predatory insurance practices engaged in by Allstate.

43.    On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to follow Allstate's directives to engage in illegal and predatory insurance practices and because he had brought these illegal and predatory practices to the attention of Allstate's management and then subsequently filed complaints with the Massachusetts Department of Insurance. As confirmed by the Massachusetts Department of Insurance, Allstate was, as pointed out by Mr. Wasgatt, in fact engaging in illegal insurance practices in violation the laws of the Commonwealth of Massachusetts and was financially harming and violating the rights of its customers throughout the Commonwealth.

44.    Allstate had entered into a written agreement with Mr. Wasgatt that provided that upon the termination of Mr. Wasgatt he was entitled to a termination payment.

45.    The termination payment was again referenced in his termination letter of May 22, 2020.

46.    Subsequent to his termination, Mr. Wasgatt was sent a spreadsheet with the calculations of his termination payment. The spreadsheet provided that his termination payment was to be Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

47.    In breach of the parties' agreement, Allstate failed and refused to make this termination payment.

# CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Misclassification As An Independent Contractor
### Chapters 149, §148B; 151, 152 & 62B
### (Against All Defendants)

48.    Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

6

49. In 2004, the Massachusetts legislature amended the independent contractor statute, Chapter 149, section 148D, making the statute one of the most, if not the most, stringent in the Nation.

50. The statute reflects a strong public policy disfavoring the classification of those providing services to another as independent contractors.

51. The Massachusetts Attorney General has rendered an advisory opinion stating that "[t]he need for proper classification of individuals in the workplace is of paramount importance to the Commonwealth."

52. The Attorney General further stated in its advisory opinion:

> Entities that misclassify individuals are in many cases **committing insurance fraud** and deprive individuals of many protections and benefits, both public and private, that employees enjoy. Misclassified individuals are often left without unemployment insurance and worker's compensation benefits. In addition, misclassified individuals do not have access to employer-provided health care and may be paid reduced wages or cash as wage payments. [emph. added].

53. Under the Massachusetts' independent contractor statute, an individual performing any service is presumed to be an employee. This presumption may only be rebutted by the establishment of all three (3) conditions of the independent contractor test set forth in the statute. Allstate cannot establish all three (3) conditions to overcome the presumption, let alone any single condition, showing that Plaintiff was improperly classified as independent contractors.

54. Plaintiff as an Exclusive Agent is a captive agent of Allstate and he could only sell and service Allstate products and clients. Allstate, however, has a separate group of salespersons who work in its Call Centers who are classified as employees.

55. Allstate over time has converted its employee Exclusive Agents to independent contractors, continuing to perform the same functions and duties for Allstate as had been performed by the Exclusive Agents when they had previously been classified as employees.

56. Concurrently, Allstate has maintained its Call Center sale's force as employees.

57. Allstate's independent contractor Exclusive Agents and its employee Call Center salespersons perform overlapping sale functions core to the business of Allstate.

58. The services performed for and the tasks carried out by Plaintiff on behalf of Allstate include marketing Allstate insurance products in accordance with Allstate's guidelines and under its direct oversight, identifying potential customers for Allstate, being the face of Allstate to Allstate's customers, servicing Allstate clients, customer service, payments,

transfers of vehicles on and off policies, correction of lienholders and mortgagee's on numerous policies, the processing of payments and the facilitation of Registry Documents.

59. When Plaintiff received a claim from an insured, he was discouraged by Allstate from helping or otherwise assisting the insured with claims. Mr. Wasgatt was specifically directed by his superiors at Allstate that the providing of such advice to customers would not be looked upon in a favorable light by Allstate corporate. Mr. Wasgatt was told that he worked for the company (Allstate) and he should be looking out for the company's (Allstate's) best interests, not the insureds. Plaintiff was directed by Allstate never to suggest that an insured contact legal representation for a bodily injury or liability claim. Like any other employees, his fidelity was to be solely to Allstate and he was to only serve the needs and wishes of his employer, Allstate – he was not to act independently or to conduct himself as independent professional.

60. A significant percent of all insurance policies sold in the Commonwealth of Massachusetts by Allstate are sold through its Exclusive Agents and the remainder are sold through its employee agents working at its Call Centers.

61. Plaintiff was fully integrated into Allstate's corporate structure and the transitioning of Allstate Exclusive Agents to independent contractors was a planned corporate restructuring designed in part to enhance the distribution of Allstate insurance products while decreasing overhead costs by avoiding the payment of taxes, employee benefits, workers' compensation and other costs associated with paying an agent as an employee. While at the same time shifting costs onto the independent contractor Exclusive Agents, costs that had previously been borne by Allstate as an employer.

62. Rather than use independent agents under the "American Rule" that are free to sell the products of any carrier, Allstate converted its existing employees to independent contractors precluding these converted Exclusive Agents from running their agencies as independent professionals.

63. Plaintiff was not free from control and direction in connection of his performance for Allstate.

64. As Exclusive and captive agents, Allstate directed Plaintiff on how he was to perform, including the hours to work, set performance standards, controlled how he advertised his agency, how to interact with customers, who he could hire and fire, and the Plaintiff could only purchase E&O insurance from Allstate.

65. Plaintiff was mandated to exclusively work for Allstate and not to work for, provide services to or sell the products of any other insurance carrier.

66. Plaintiff was only permitted to service Allstate's actual and prospective clients. Plaintiff was required to market his agency as an exclusive Allstate agency and Allstate controlled the content of the Plaintiff's marketing materials.

67.   All banking accounts in which customer payments were deposited were controlled by Allstate. Plaintiff did not deposit customer payments in bank accounts controlled by Plaintiff, but rather all payments by customers were placed in bank accounts under the control of Allstate.

68.   Plaintiff was required to attend mandatory training to be an Exclusive Allstate agent. Allstate designated where Plaintiff was to work and operate his captive agency and Allstate closely tracked Plaintiff's performance.

69.   The training that Allstate required Plaintiff to attend as part of being employed as Exclusive Agent primarily focused on teaching Plaintiff and other newly employed Exclusive Agents the fundamentals on how to sell insurance and be an insurance agent.

70.   Allstate ultimately decided which customer it would insure or not and Plaintiff had no control, let alone say or input, into who they could insure and had to strictly adhere to Allstate's decisions and directives. All changes on policies had to be approved by Allstate's RMBC Call Center. Exclusive Agents had no authority to make exceptions for individual insureds. All changes made to policies where overseen and approved by the Allstate's management staff.

71.   Allstate closely tracked the performance of Plaintiff.

72.   Plaintiff was overseen by Allstate's Human Resources Department, the same as Allstate's Call Center salespersons and all of the other employees of Allstate.

73.   The services rendered by Plaintiff to Allstate were not performed outside the usual course of Allstate's business and were not merely incidental to the Allstate's insurance business. Rather, the services rendered by Plaintiff were a necessary and core part of, and fully integrated into, Allstate's business and operations.

74.   As a captive agent exclusive to Allstate, Plaintiff worked in Allstate branded agency offices exclusively selling Allstate insurance products and services.

75.   Plaintiff was a core component of Allstate's business and the primary means by which Allstate sold its products and services to its customers.

76.   All of the information obtained by Plaintiff as an Exclusive Agent of Allstate was deemed by Allstate to be the confidential business information of Allstate.

77.   Plaintiff interacted with Allstate's customers for the purpose of selling policies of insurance for Allstate and to service the customer needs, an integral part of Allstate's business model.

78.   Plaintiff was not an independently established trade, occupation, profession or business in that he was exclusive to Allstate. In fact, Allstate has historically exclusively sold its insurance products through its employee salespersons, whether they be retail outlets, Neighborhood Office Agent program, as Exclusive Agents or currently Call Center

9

salespersons. Allstate transformed a business model that had at one time been in compliance with the law to one that directly violated the law by reclassifying its employee sales agents to independent contractors.

79.     Allstate has strict directives that Plaintiff was required to abide by the rules and procedures set forth Allstate's manuals that set forth how Plaintiff was to operate and conduct himself as an Exclusive Agent of Allstate.

80.     Plaintiff was integrated into Allstate's corporate structure, with corporate layers of managers overseeing Plaintiff along with the employee Call Center Agents, as well as the other Exclusive Agents.

81.     Plaintiff was prohibited from holding himself out as independent insurance agents capable of selling the insurance products of multiple carriers. Plaintiff was only permitted to maintain his Allstate Agency with the permission and consent of Allstate, permission and consent that Allstate could revoke at any time.

82.     Allstate had authority over the retention of Plaintiff's employees. Plaintiff could not hire anyone that was not first approved and then trained by Allstate.

83.     Plaintiff's office was required to display Allstate signage and Allstate claimed ownership to Plaintiff's telephone numbers and Plaintiff's files and customer information.

84.     Plaintiff's lost wages and damages include, but are not limited to: Exclusive Agency contract fees, worker's compensation payments, payroll taxes and deductions, social security, benefits, unemployment taxes, overtime wages, unpaid wages, office expenses, salaries and related expenses of persons working in Plaintiff's Allstate agency office, and other expenses and costs that should have been borne by Allstate as the employer.

85.     Plaintiff will prove his damages at trial.

## SECOND CAUSE OF ACTION
### Termination of Mr. Wasgatt In Violation of Public Policy
### (Against Allstate)

86.     Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

87.     Mr. Wasgatt was instructed by Allstate to engage in insurance practices that were in violation of the laws of the Commonwealth of Massachusetts.

88.     Those illegal insurance practices violated the laws of the Commonwealth of Massachusetts intended to protect the public at large.

89.     Mr. Wasgatt refused to engage in the illegal insurance practices as directed by Allstate.

90.   Rather Mr. Wasgatt notified those above him in Allstate's corporate hierarchy that Allstate was directing its Exclusive Agents to engage in illegal insurance practices.

91.   Allstate ignored this information and continued to engage in illegal insurance practices, as well as to continue to demand that Mr. Wasgatt, along with the other Exclusive Agents, engage in illegal insurance practices on behalf of Allstate.

92.   Mr. Wasgatt accordingly notified the Massachusetts Department of Insurance of six (6) illegal insurance practices engaged in by Allstate. The Department of Insurance, in each instance, agreed with Mr. Wasgatt that Allstate's insurance practices violated the insurance laws of the Commonwealth of Massachusetts intended to protect the public at large.

93.   On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to engage in illegal insurance practices as directed by his superiors at Allstate, as well as the fact that Mr. Wasgatt notified his superiors they were engaging in illegal insurance practices and filed six (6) complaints with Massachusetts Department of Insurance that Allstate engaged in illegal insurance practices.

94.   Mr. Wasgatt will prove his damages at trial.

### THIRD CAUSE OF ACTION
### Breach of Contract
### Failure to Pay Mr. Wasgatt His Termination Payment
### (Against Allstate)

95.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

96.   Allstate and Mr. Wasgatt entered into a written agreement containing a material provision that Allstate would pay Mr. Wasgatt a termination payment upon his termination from Allstate.

97.   The written agreement was reconfirmed by Allstate in the termination letter it sent Mr. Wasgatt dated May 22, 2020.

98.   The termination payment was further confirmed by a spreadsheet prepared by Allstate and sent to Mr. Wasgatt following his termination setting forth how Allstate calculated the termination payment.

99.   The amount of the termination payment was Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

100.  Mr. Wasgatt performed all of his material duties and obligations under the parties' agreement and was entitled to the termination payment.

11

101.    Allstate breached the parties' agreement by failing to pay Mr. Wasgatt his termination payment.

102.    Mr. Wasgatt will prove his damages at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

  a.  Judgment against Defendants;

  b.  Damages to be proven at trial;

  c.  Treble damages;

  d.  Pre-judgment and post-judgment interest;

  e.  Attorneys' fees and costs;

  f.  Appropriate injunctive, declaratory and other equitable relief; and

  g.  Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests that this action to be tried by jury.

DATED: August 14, 2020

PLAINTIFF,
By his attorney,

Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
460 Totten Pond Road, Suite 410
Waltham, Massachusetts 02451
(617) 232-7500 Telephone
(617) 232-7560 Facsimile
tim@cutlerlegal.com