### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

PAUL WASGATT,
    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY, and
GLENN T. SHAPIRO,
    Defendants.

Civil Action No. 4:20-cv-40118

# SECOND AMENDED COMPLAINT
# AND REQUEST FOR TRIAL BY JURY

## PREFATORY ALLEGATIONS

1.    Plaintiff Paul Wasgatt ("Mr. Wasgatt") is an individual residing at 23 Fiske Street, Worcester, Massachusetts

2.    Defendant Allstate Insurance Company ("Allstate") is an Illinois corporation with a place of business located in Sturbridge, Massachusetts.

3.    Defendant Glenn T. Shapiro ("Mr. Shapiro") is an individual residing at 375 Greenhill Road, Longmeadow, Massachusetts and is the President of Allstate.

4.    Mr. Shapiro was at all relevant times alleged herein, an officer and agent of Allstate having management responsibilities for Allstate and is personally liable for the wrongdoings alleged here in accordance with Chapter 149, section 148B of the Massachusetts General Laws.

5.    Allstate, and Mr. Shapiro are collectively referred to herein as "Allstate" or "Defendants".

## BACKGROUND

6.    Allstate is in the business of selling insurance products, along with related services, to consumers throughout the United States, including the Commonwealth of Massachusetts.

7.    Mr. Shapiro is an officer and/or agent of Allstate involved in the management of Allstate and was directly involved in the overseeing, managing and promulgating the use of and misclassification of its Exclusive Agents as independent contractors, including the Plaintiff.

8.      Scott Blume and Edward Norcia directly supervised Plaintiff with respect to the performance of Plaintiff's duties and responsibilities at Allstate.  Allstate required that Plaintiff participate in Allstate's required training and complied with Allstate's policies and procedures.  They tracked the performance of Plaintiff and had a significant and controlling say in whether or not Plaintiff was to be terminated from Allstate.  They disciplined Plaintiff when they felt that Plaintiff's attitude and behavior did not comport with the corporate cultural of Allstate.

9.      Mr. Shapiro as President (since January 2018, Executive Vice President since March 2016) oversees the entirety of the operations of Allstate, including the decision to continue to misclassify its Exclusive Agents in Massachusetts as independent contractors.  Mr. Shapiro has the final say in how Allstate's workforce is structured and whether or not to use independent contractors to carry out the core and perhaps the most important aspect of Allstate's business, which is to sell its insurance products.

10.     Mr. Wasgatt had repeated communications with Mr. Shapiro regarding two issues: Allstate's failure and refusal comply with the laws of the Commonwealth of Massachusetts governing insurance and Allstate's unfilled representations that it would be offering additional insurance products to the consumers located within Massachusetts.

11.     In about 2012 Allstate commenced selling its insurance products in the Commonwealth of Massachusetts.  Ignoring the significant change in the laws of Massachusetts that went into effect in 2004, Allstate decide to sell its insurance through Exclusive Agents, which are fundamentally employees that Allstate has illegally misclassified as independent contractors, rather than comply with the laws of the Commonwealth of Massachusetts and sell its insurance through those agents that Allstate had properly classified as employees.

12.     Mr. Shapiro oversaw the expansion and use of independent contractors in lieu of employees to exclusively sell its insurance policies.  Mr. Shapiro was ultimately responsible for deciding to ignore and violate the laws of the Commonwealth of Massachusetts prohibiting the misclassification of employees as independent contractors, an act that the Massachusetts Attorney General has called to be a form of insurance fraud.

13.     Mr. Shapiro has known at all relevant times the misclassification laws of the Commonwealth of Massachusetts having been the Chief Claims Officer & EVP - Commercial Insurance at Liberty Mutual Group, Inc. headquartered in Boston, Massachusetts, as well as holding high level posts within insurance companies in the Boston area prior thereto.

14.     The purpose of Allstate, as lead by Mr. Shapiro, in misclassifying its employee insurance agents in Massachusetts as independent contractors was to gain an economic advantage over its competitors, which was achieved by avoiding paying Massachusetts payroll taxes, worker's compensation and purchasing unemployment insurance, all of which a legitimate employer doing business in and complying with the laws of the Commonwealth would pay for and purchase.  Mr. Shapiro sought to increase his company's bottom line by defrauding

the Commonwealth of Massachusetts while placing its Exclusive Agents at a grave financial risk.

15.  Mr. Wasgatt was an Allstate Exclusive Agent who was terminated by Allstate on May 22, 2020 for an undefined cause.

16.  During the entirety of his employment with Allstate, Mr. Wasgatt was misclassified by Allstate as an independent contractor.

17.  On May 22, 2020, Mr. Wasgatt filed a complaint with the Massachusetts Attorney General against Allstate for misclassifying him as independent contractor and a right to sue letter has been issued.

18.  Historically, Allstate's business model has been to sell its policies through employee agents situated in retail stores such as Sears and in Allstate-owned sales offices.  Then Allstate's business model migrated to the Neighborhood Office Agent program, which consisted of local offices manned and run by Allstate employees.  Allstate later shifted to its Exclusive Agency program, which at first primarily consisted of employees and Call Centers manned by Allstate employees.

19.  Allstate's employees whether working out of a Sears' store, an Allstate-owned sales office, a Neighborhood Office, Call Centers or as an Exclusive Agent, were all performing the same core Allstate business function -- exclusively selling Allstate's insurance products and servicing Allstate's customers.

20.  In its never-ending search for ways to optimize financial returns, which entailed the shedding of costs and overhead, Allstate converted all of its Exclusive Agents from the status as employees to independent contractors, while simultaneously maintaining employee salespersons in its Call Centers.  This misclassification of its Exclusive Agents working in the marketing, sales and customer service portion of its business relieved Allstate of the financial burden of payroll taxes, benefits, and the costs of unemployment insurance and worker's compensation insurance; thus, defrauding the Commonwealth of tax dollars while denying its employees basic financial protections.

21.  The misclassification of its Exclusive Agents as independent contractors is a direct violation of the Massachusetts statutory prohibitions against classifying employees as independent contractors.

22.  Exclusive Agents are also referred to as captive agents in that they may only work for a single insurance carrier, only selling that carrier's products and servicing its clients.

23.  As a captive agent, Plaintiff could only sell Allstate insurance products and services and could not work for or with any other insurance carriers, unless otherwise specifically permitted to do so by Allstate.

24.   Plaintiff was required to work certain hours.  He was required to work from specific locations set and restricted by Allstate.

25.   Allstate oversaw through policies and direct intervention the hiring and firing of Plaintiff's employees.

26.   Plaintiff was required only to use Allstate approved advertising materials.

27.   All payments received from customers went into financial accounts solely controlled and managed by Allstate.

28.   Insurance agents are an integral part of the Allstate's business and without insurance agents there would be no Allstate.  Plaintiff's performance was thus unique to Allstate.

29.   As a captive agent, Plaintiff was required to hold himself out as an agent of Allstate and to actively and only promote Allstate's products; and not to promote or sell the policies of any other carrier.

30.   As a captive agent, Plaintiff was required to attend mandatory training to learn the internal policies and procedures of Allstate and how to sell Allstate insurance products and services, as well as to conform to the practices and procedures of Allstate -- the same any as other employee would be required to do by their employer.

31.   The mandated training was in large part to train captive agents on the fundamentals on how to sell insurance and what to do as an insurance agent.  Allstate took and continues to take individuals with no significant insurance experience and then train them to be Allstate insurance agents, exclusive to Allstate.

32.   Prior to and leading up to his wrongful termination by Allstate on May 22, 2020, Mr. Wasgatt filed a number of complaints with the Massachusetts Department of Insurance regarding Allstate's deceptive insurance practices.

33.   These complaints concerned Allstate's engagement in illegal practices in the Commonwealth of Massachusetts, practices that directly harmed consumers of insurance policies, particularly auto policies.

34.   On numerous occasions, while working for Allstate, Mr. Wasgatt was directed by Allstate to take actions with respect Allstate's customers that were in violation of the insurance laws of Massachusetts.

35.   Mr. Wasgatt notified his superiors at Allstate of these illegal actions -- Scott Blume, Andrew Grande, Scott Schrum, David Schwartzer, Doug Lojko, Edward Norcia, Frederick Owens, Hall Crowder, James Flynn, Kymberly Terry, Laurie Landeen, Sara Syrotchen, Shawn Rogerson, Stephen Roberto, David Prentergast, Tammy Shaulis, Mr. Shapiro and the entire RMBC Staff.  Rather than correct or even address Allstate's illegal activities and

actions, Allstate directed Mr. Wasgatt to ignore the laws of the Commonwealth Massachusetts intended to protect financial and other rights of Massachusetts consumers.

36. These illegal activities and actions are endemic to a culture created and nurtured by Allstate's leadership, starting at the top with Mr. Shapiro and then permeating throughout the company. A corporate culture that not only ignores, but openly distained, laws designed to protect consumers (its customers) and workers (its employees). All in the interest of higher returns and increased stock values.

37. Mr. Wasgatt refused to engage in the illegal insurance practices as instructed and directed by Allstate.

38. When Mr. Wasgatt notified Allstate of and requested that Allstate abandon its illegal insurance practices, he was ignored and Allstate continued to engage in its illegal activities unabated. Mr. Wasgatt was thus left with no choice but to notify the Department of Insurance, which in turn directed Allstate to cease and desist from continuing to engage in illegal insurance practices.

39. The following are the complaints lodged by Mr. Wasgatt regarding Allstate's illegal issuance practices with the Massachusetts Department of Insurance regarding Allstate's illegal insurance practices:

- Allstate issued cancelation of policies falsely and illegally listing the reason for the cancelation as being that the insured already had a current auto policy. That is not a valid reason under Massachusetts law for a cancelation.

- Allstate refused to change the driver's classification of a driver during the policy period. Massachusetts regulations require that driver classification be done based on the date upon which the classification change occurs, not the policy renewal date.

- Allstate illegally added drivers to auto insurance policies without the insureds permission or consent, which is a violation of the laws of Massachusetts.

- Allstate used third party information to determine fault in accidents and refused to abide by and ignored the official record of the Registry of Motor Vehicles as required by Massachusetts law.

- Allstate held that accidents that the insured was not at fault were to be used in the calculation of renewal premiums. Allstate wrongly considered accidents in which the insured was not at fault to be chargeable as an at fault accident and illegally charged the insured additional premium upon the renewal of their policies until Allstate received payment in subrogation.

- Allstate charged customers late fees of $25.00 on policies canceled by 2A on the renewal date. Violating Massachusetts laws.

40.    The complaints filed by Mr. Wasgatt both with the Massachusetts Department of Insurance and Allstate itself were to protect the public at large from the illegal and predatory insurance practices engaged in by Allstate.

41.    On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to follow Allstate's directives to engage in illegal and predatory insurance practices and because he had brought these illegal and predatory practices to the attention of Allstate's management and then subsequently filed complaints with the Massachusetts Department of Insurance.  As confirmed by the Massachusetts Department of Insurance, Allstate was, as pointed out by Mr. Wasgatt, in fact engaging in illegal insurance practices in violation of the laws of the Commonwealth of Massachusetts and was financially harming and violating the rights of its customers throughout the Commonwealth.

42.    Allstate had entered into a written agreement with Mr. Wasgatt that provided that upon the termination of Mr. Wasgatt he was entitled to a termination payment.

43.    The termination payment was again referenced in his termination letter of May 22, 2020.

44.    Subsequent to his termination, Mr. Wasgatt was sent a spreadsheet with the calculations of his termination payment.  The spreadsheet provided that his termination payment was to be Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

45.    In breach of the parties' agreement, Allstate failed and refused to make this termination payment.

46.    Plaintiff worked in the area of Worcester, Massachusetts, where he grew up.

47.    Plaintiff's customers, as well as potential customers, known him both by name, face and reputation.

48.    Plaintiff has developed a well-known, positive reputation in and around Worcester, Massachusetts.

49.    Since being terminated from Allstate, Plaintiff has been running his own, independent insurance agency.

50.    As part of his marketing and advertising of his current agency, Plaintiff has used his likeness and name, including pictures.

51.    After the termination of employment by Allstate, Plaintiff established his own, independent insurance agency, Allstate misappropriated Plaintiff's picture and name to sell auto and homeowner's insurance policies of Allstate.

52.   Allstate sent e-mails with Plaintiff's likeness and/or name to Plaintiff's customers, potential customers and the public at large advertising to those customers to renew their insurance policies with Allstate.

53.   Allstate sought to mislead Plaintiff's customers and potential customers, as well as the public at large, into falsely thinking and believing that Plaintiff was reaching out to them to sell Allstate auto and home insurance when in fact it was Allstate that was reaching out and soliciting their business under false pretenses.

54.   Allstate did not request to use, nor did Plaintiff authorize or consent to Allstate using, his likeness or name in the e-mails sent out by Allstate or in any other advertisement or solicitation.

55.   In its misappropriating of Plaintiff's picture and name, Allstate reached out to Plaintiff's customers and potential customers and deceived those customers and potential customers of Plaintiff into thinking and believing that Plaintiff was associated with Allstate and was reaching out to them on behalf Allstate when in fact Plaintiff no longer had any association with Allstate and the solicitation was coming directly from Allstate, *not* Plaintiff.

56.   In misappropriating the likeness and name of Plaintiff, Allstate directly solicited and advertised to Plaintiff's customers, potential customers and the public at large to renew their insurance policies directly with and through Allstate and not with and through Plaintiff.

57.   Plaintiff's customers and potential customers were deceived and mislead by Allstate's misappropriation and misuse of Plaintiff's likeness and name.

58.   Allstate intended and continues to intend to mislead Plaintiff's customers and potential customers as to Plaintiff's involvement and association with Allstate, and to profit from the commercial use of Plaintiff's likeness and name.

59.   Allstate in fact profited from the use of Plaintiff's likeness and name.

60.   On December 9, 2020 counsel wrote Allstate's counsel a cease-and-desist letter identifying the misappropriation of Plaintiff's name and likeness and attaching copies of the e-mails sent out by Allstate to Plaintiff's customers and prospective customers with Plaintiff's name and picture purporting to be from Plaintiff.

61.   In the December 9th letter, Plaintiff requested that Allstate identify what legal right it believed it had to use Plaintiff's likeness and name in its marketing and advertising.

62.   On December 18, 2020 Allstate tersely responded to the December 9th cease-and-desist letter and did not deny its wrongdoing in misappropriating Plaintiff's likeness and name and nor did Allstate present or offer a legal basis entitling it to use Plaintiff's name and likeness in its marketing and advertising.

63.     Nor has Allstate represented or otherwise stated that it has ceased using Plaintiff's name or likeness.

64.     As result of Allstate sending out the false and misleading e-mails to Plaintiff's actual and potential customers, Plaintiff has lost business with those customers.

65.     At all times, Allstate intentionally sought to interfere with Plaintiff's relationships with its current and prospective customers.

66.     At all times, Allstate knew it had no right to use Plaintiff's likeness and name in those e-mails, and potentially other marketing materials, and that it was misleading and deceiving Plaintiff's customers and the public at large by using Plaintiff's name and likeness.

67.     Allstate engaged in these acts of deception for a commercial advantage by deceiving consumers to purchase its insurance products under false pretenses.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Misclassification As An Independent Contractor
Chapters 149, §148B; 151, 152 & 62B
(Against All Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

69.     In 2004, the Massachusetts legislature amended the independent contractor statute, Chapter 149, section 148D, making the statute one of the most, if not the most, stringent in the Nation.

70.     The statute reflects a strong public policy disfavoring the classification of those providing services to another as independent contractors.

71.     The Massachusetts Attorney General has rendered an advisory opinion stating that "[t]he need for proper classification of individuals in the workplace is of paramount importance to the Commonwealth."

72.     The Attorney General further stated in its advisory opinion:

> Entities that misclassify individuals are in many cases **committing insurance fraud** and deprive individuals of many protections and benefits, both public and private, that employees enjoy.  Misclassified individuals are often left without unemployment insurance and worker's compensation benefits.  In addition, misclassified individuals do not have access to employer-provided health care and may be paid reduced wages or cash as wage payments.  [emph. added].

8

73. Under the Massachusetts' independent contractor statute, an individual performing any service is presumed to be an employee.  This presumption may only be rebutted by the establishment of <u>all</u> three (3) conditions of the independent contractor test set forth in the statute.  Allstate cannot establish all three (3) conditions to overcome the presumption, let alone any single condition, showing that Plaintiff was improperly classified as independent contractors.

74. Plaintiff as an Exclusive Agent is a captive agent of Allstate and he could only sell and service Allstate products and clients.  Allstate, however, has a separate group of salespersons who work in its Call Centers who are classified as employees.

75. Allstate over time has converted its employee Exclusive Agents to independent contractors, continuing to perform the same functions and duties for Allstate as had been performed by the Exclusive Agents when they had previously been classified as employees.

76. Concurrently, Allstate has maintained its Call Center sale's force as employees.

77. Allstate's independent contractor Exclusive Agents and its employee Call Center salespersons perform overlapping sale functions core to the business of Allstate.

78. The services performed for and the tasks carried out by Plaintiff on behalf of Allstate include marketing Allstate insurance products in accordance with Allstate's guidelines and under its direct oversight, identifying potential customers for Allstate, being the face of Allstate to Allstate's customers, servicing Allstate clients, customer service, payments, transfers of vehicles on and off policies, correction of lienholders and mortgagee's on numerous policies, the processing of payments and the facilitation of Registry Documents.

79. When Plaintiff received a claim from an insured, he was discouraged by Allstate from helping or otherwise assisting the insured with claims.  Mr. Wasgatt was specifically directed by his superiors at Allstate that the providing of such advice to customers would not be looked upon in a favorable light by Allstate corporate.  Mr. Wasgatt was told that he worked for the company (Allstate) and he should be looking out for the company's (Allstate's) best interests, not the insureds.  Plaintiff was directed by Allstate never to suggest that an insured contact legal representation for a bodily injury or liability claim.  Like any other employees, his fidelity was to be solely to Allstate and he was to only serve the needs and wishes of his employer, Allstate -- he was not to act independently or to conduct himself as independent professional.

80. A significant percent of all insurance policies sold in the Commonwealth of Massachusetts by Allstate are sold through its Exclusive Agents and the remainder are sold through its employee agents working at its Call Centers.

81. Plaintiff was fully integrated into Allstate's corporate structure and the transitioning of Allstate Exclusive Agents to independent contractors was a planned corporate restructuring designed in part to enhance the distribution of Allstate insurance products while decreasing

overhead costs by avoiding the payment of taxes, employee benefits, workers' compensation and other costs associated with paying an agent as an employee. While at the same time shifting costs onto the independent contractor Exclusive Agents, costs that had previously been borne by Allstate as an employer.

82.    Rather than use independent agents under the "American Rule" that are free to sell the products of any carrier, Allstate converted its existing employees to independent contractors precluding these converted Exclusive Agents from running their agencies as independent professionals.

83.    Plaintiff was not free from control and direction in connection of his performance for Allstate.

84.    As Exclusive and captive agents, Allstate directed Plaintiff on how he was to perform, including the hours to work, set performance standards, controlled how he advertised his agency, how to interact with customers, who he could hire and fire, and the Plaintiff could only purchase E&O insurance from Allstate.

85.    Plaintiff was mandated to exclusively work for Allstate and not to work for, provide services to or sell the products of any other insurance carrier.

86.    Plaintiff was only permitted to service Allstate's actual and prospective clients. Plaintiff was required to market his agency as an exclusive Allstate agency and Allstate controlled the content of the Plaintiff's marketing materials.

87.    All banking accounts in which customer payments were deposited were controlled by Allstate. Plaintiff did not deposit customer payments in bank accounts controlled by Plaintiff, but rather all payments by customers were placed in bank accounts under the control of Allstate.

88.    Plaintiff was required to attend mandatory training to be an Exclusive Allstate agent. Allstate designated where Plaintiff was to work and operate his captive agency and Allstate closely tracked Plaintiff's performance.

89.    The training that Allstate required Plaintiff to attend as part of being employed as Exclusive Agent primarily focused on teaching Plaintiff and other newly employed Exclusive Agents the fundamentals on how to sell insurance and be an insurance agent.

90.    Allstate ultimately decided which customer it would insure or not and Plaintiff had no control, let alone say or input, into who they could insure and had to strictly adhere to Allstate's decisions and directives. All changes on policies had to be approved by Allstate's RMBC Call Center. Exclusive Agents had no authority to make exceptions for individual insureds. All changes made to policies where overseen and approved by the Allstate's management staff.

91.    Allstate closely tracked the performance of Plaintiff.

92. Plaintiff was overseen by Allstate's Human Resources Department, the same as Allstate's Call Center salespersons and all of the other employees of Allstate.

93. The services rendered by Plaintiff to Allstate were not performed outside the usual course of Allstate's business and were not merely incidental to the Allstate's insurance business. Rather, the services rendered by Plaintiff were a necessary and core part of, and fully integrated into, Allstate's business and operations.

94. As a captive agent exclusive to Allstate, Plaintiff worked in Allstate branded agency offices exclusively selling Allstate insurance products and services.

95. Plaintiff was a core component of Allstate's business and the primary means by which Allstate sold its products and services to its customers.

96. All of the information obtained by Plaintiff as an Exclusive Agent of Allstate was deemed by Allstate to be the confidential business information of Allstate.

97. Plaintiff interacted with Allstate's customers for the purpose of selling policies of insurance for Allstate and to service the customer needs, an integral part of Allstate's business model.

98. Plaintiff was not an independently established trade, occupation, profession or business in that he was exclusive to Allstate. In fact, Allstate has historically exclusively sold its insurance products through its employee salespersons, whether they be retail outlets, Neighborhood Office Agent program, as Exclusive Agents or currently Call Center salespersons. Allstate transformed a business model that had at one time been in compliance with the law to one that directly violated the law by reclassifying its employee sales agents to independent contractors.

99. Allstate has strict directives that Plaintiff was required to abide by the rules and procedures set forth Allstate's manuals that set forth how Plaintiff was to operate and conduct himself as an Exclusive Agent of Allstate.

100. Plaintiff was integrated into Allstate's corporate structure, with corporate layers of managers overseeing Plaintiff along with the employee Call Center Agents, as well as the other Exclusive Agents.

101. Plaintiff was prohibited from holding himself out as independent insurance agents capable of selling the insurance products of multiple carriers. Plaintiff was only permitted to maintain his Allstate Agency with the permission and consent of Allstate, permission and consent that Allstate could revoke at any time.

102. Allstate had authority over the retention of Plaintiff's employees. Plaintiff could not hire anyone that was not first approved and then trained by Allstate.

103.   Plaintiff's office was required to display Allstate signage and Allstate claimed ownership to Plaintiff's telephone numbers and Plaintiff's files and customer information.

104.   Plaintiff's lost wages and damages include, but are not limited to: Exclusive Agency contract fees, worker's compensation payments, payroll taxes and deductions, social security, benefits, unemployment taxes, overtime wages, unpaid wages, office expenses, salaries and related expenses of persons working in Plaintiff's Allstate agency office, and other expenses and costs that should have been borne by Allstate as the employer.

105.   Plaintiff will prove his damages at trial.

**SECOND CAUSE OF ACTION**
**Termination of Mr. Wasgatt In Violation of Public Policy**
**(Against Allstate)**

106.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

107.   Mr. Wasgatt was instructed by Allstate to engage in insurance practices that were in violation of the laws of the Commonwealth of Massachusetts.

108.   Those illegal insurance practices violated the laws of the Commonwealth of Massachusetts intended to protect the public at large.

109.   Mr. Wasgatt refused to engage in the illegal insurance practices as directed by Allstate.

110.   Rather Mr. Wasgatt notified those above him in Allstate's corporate hierarchy that Allstate was directing its Exclusive Agents to engage in illegal insurance practices.

111.   Allstate ignored this information and continued to engage in illegal insurance practices, as well as to continue to demand that Mr. Wasgatt, along with the other Exclusive Agents, engage in illegal insurance practices on behalf of Allstate.

112.   Mr. Wasgatt accordingly notified the Massachusetts Department of Insurance of six (6) illegal insurance practices engaged in by Allstate.  The Department of Insurance, in each instance, agreed with Mr. Wasgatt that Allstate's insurance practices violated the insurance laws of the Commonwealth of Massachusetts intended to protect the public at large.

113.   On May 22, 2020, Allstate terminated Mr. Wasgatt because he refused to engage in illegal insurance practices as directed by his superiors at Allstate, as well as the fact that Mr. Wasgatt notified his superiors they were engaging in illegal insurance practices and filed six (6) complaints with Massachusetts Department of Insurance that Allstate engaged in illegal insurance practices.

114.   Mr. Wasgatt will prove his damages at trial.

## THIRD CAUSE OF ACTION
### Breach of Contract
### Failure to Pay Mr. Wasgatt His Termination Payment
### (Against Allstate)

115.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

116.   Allstate and Mr. Wasgatt entered into a written agreement containing a material provision that Allstate would pay Mr. Wasgatt a termination payment upon his termination from Allstate.

117.   The written agreement was reconfirmed by Allstate in the termination letter it sent Mr. Wasgatt dated May 22, 2020.

118.   The termination payment was further confirmed by a spreadsheet prepared by Allstate and sent to Mr. Wasgatt following his termination setting forth how Allstate calculated the termination payment.

119.   The amount of the termination payment was Two Hundred Ninety-Eight Thousand, Two Hundred Forty-Eight Dollars and Eighteen ($298,248.18) Cents.

120.   Mr. Wasgatt performed all of his material duties and obligations under the parties' agreement and was entitled to the termination payment.

121.   Allstate breached the parties' agreement by failing to pay Mr. Wasgatt his termination payment.

122.   Mr. Wasgatt will prove his damages at trial.

## FOURTH CAUSE OF ACTION
### Misappropriation of Likeness
### (Against Allstate)

123.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

124.   Allstate, without permission or consent of Plaintiff, used Plaintiff's likeness and name to advertise and market Allstate's auto and homeowner insurance products.

125.   Plaintiff uses his likeness in the marketing and advertising of his business since leaving his employment with Allstate.

126.   Plaintiff's likeness has commercial value to his current business.

13

127.   Allstate used and continues to use Plaintiff's likeness and name to advertise, market and sell Allstate auto and homeowner insurance products to individuals residing in the Commonwealth of Massachusetts.

128.   Allstate used, and is believed to be continuing to use, the likeness and name of Plaintiff to advertise and market its policies of insurance to individuals within the Commonwealth of Massachusetts.

129.   The misuse of Plaintiff's likeness and name by Allstate was, and continues to be, in violation of G.L.c. 214 § 3A.

130.   Plaintiff has been damaged by Allstate's wrongdoing, and Allstate has been unjustly benefited by its misappropriation of Plaintiffs likeness and name to advertise, market and sell policies of insurance.

131.   Plaintiff has been damaged in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Tortious Inference with Contract and Business Relations
### (Against Allstate)

132.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

133.   Plaintiff has and had valid and valuable agreements and business relations with a large number of individuals for the placement and purchase of auto and homeowner's insurance policies.

134.   Allstate knew of the existence of these agreements and business relationships between Plaintiff and his customers and sought to and continues to seek to induce customers of Plaintiff to cease doing business with Plaintiff and not renew their polices of insurance with and through Plaintiff and to instead for these customers to purchase and place their insurance policies directly through and with Allstate.

135.   Allstate has used and is believed to be continuing to use false pretenses, deception and improper motives and means to drive customers and potential customers of Plaintiff away from Plaintiff and to Allstate.

136.   Allstate induced and deceived customers and potential customers of Plaintiff to cease doing business with Plaintiff and to do business directly with Allstate.

137.   Allstate's actions and conduct were improper in motive and means.

138.   Plaintiff has been damaged in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### Violation of The Lanham Act
### (Against Allstate)

139.    Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

140.    Allstate engaged in false advertising by falsely representing and advertising that it was Plaintiff offering insurance products.

141.    In fact, Allstate had misappropriated Plaintiff's name and likeness and was using Plaintiffs picture and name without permission or consent to mislead the public.

142.    Allstate used the internet and phone lines to communicate and engage in the false advertising.

143.    Allstate communicated the false advertising across state lines.

144.    Allstate's deceptive advertisement violated section 43(a) of the Lanham Act, codified at 15 U.S.C. §1125(a), which prohibits Allstate from using false, misleading, or deceptive representations of fact that misrepresent the nature, character or qualities of its services.

145.    Plaintiff has been damaged in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Violation of Chapter 93A
### (Against Allstate)

146.    Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

147.    Since being terminated from Allstate, Plaintiff has had his own business of selling auto and homeowners' policies of insurance.

148.    Allstate is in the business marketing and selling auto and homeowner's insurance.

149.    Plaintiff did not grant, license or otherwise authorize Allstate to use his likeness or name.

150.    Allstate misappropriated Plaintiff's likeness and name and mislead Plaintiff's customers not to do business with Plaintiff.

151.    Allstate intentionally sought to divert business from Plaintiff to itself using fraud and deception and the misappropriation of Plaintiff's likeness and name.

152.    The acts of Allstate constituted methods of unfair competition, as well as being deceptive and misleading.

## EIGTH CAUSE OF ACTION
### Injunctive Relief
### (Against Allstate)

153.   Plaintiff repeats and re-alleges each and every allegation set forth in this Complaint as though each were separately and specifically set forth herein.

154.   As a result of the actions of the Allstate as alleged herein, Plaintiff has suffered and will continue to suffer extreme hardship and actual and impending irreparable harm.

155.   Plaintiff has no adequate or speedy remedy at law for the above-mentioned conduct of the Allstate, and this action for injunctive relief is Plaintiff's only means for securing relief. Plaintiff seeks:

   a)  The issuance of a temporary restraining order and a preliminary injunction ordering Allstate to cease using Plaintiff's name and likeness; and

   b)  Issue a permanent injunction perpetually enjoining and restraining Allstate from using Plaintiff's name and likeness.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

   a.  Judgment against Defendants;

   b.  Damages to be proven at trial;

   c.  Treble damages;

   d.  Injunctive relief;

   e.  Pre-judgment and post-judgment interest;

   f.  Attorneys' fees and costs;

   g.  Appropriate injunctive, declaratory and other equitable relief; and

   h.  Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

# REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests that this action to be tried by jury.

**DATED:**        **January __, 2021**          **PLAINTIFF/COUNTERCLAIM DEFENDANT,**
**PAUL WASGATT,**
By His Attorney,


_____
Timothy K. Cutler (BBO# 636124)
CUTLER & WILENSKY LLP
460 Totten Pond Road, Suite 410
Waltham, Massachusetts 02451
(617) 232-7500 Telephone
(617) 232-7560 Facsimile
tim@cutlerlegal.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January __, 2021.


_____
Timothy K. Cutler